JAMES R. SIGEL (State Bar No. 288478)
  jamessigel@dwt.com
DAVIS WRIGHT TREMAINE LLP
50 California Street, 23rd Floor
San Francisco, CA 94111
Telephone: (415) 276-4850

JOSEPH ELIE-MEYERS (State Bar No. 325183)
  josepheliemeyers@dwt.com
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, California 90071
Telephone: (213) 633-6800

Attorneys for Respondent,
APPLE INC.

**IN THE UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: *EX PARTE* APPLICATION OF HMD GLOBAL OY FOR AN ORDER UNDER 28 U.S.C. § 1782 TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS | Case No. 25-mc-80022-EKL<br><br>**RESPONDENT APPLE INC.'S MOTION TO QUASH SUBPOENA ISSUED PURSUANT TO 28 U.S.C. § 1782**<br><br>Date:   August 27, 2025<br>Time:   10:00 a.m.<br>Dept.:   Courtroom 7<br><br>Assigned to the Hon. Eumi K. Lee |

---

APPLE INC.'S MOTION TO QUASH SUBPOENA
Case No. 25-mc-80022-EKL

1  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2  PLEASE TAKE NOTICE that on August 27, 2025 at 10:00 a.m., or as soon thereafter as the matter may be heard, in the United States District Court, Northern District of California, located at the San Jose Courthouse, Courtroom 7, 4th floor, 280 South First Street, San Jose, CA 95113, before the Honorable Eumi K. Lee, Respondent Apple Inc. ("Apple") will move, and hereby presents for hearing by the Court this motion to quash the subpoena served by Applicant HMD Global Oy ("HMD") for the reasons set forth below.

This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Wolrad Prinz zu Waldeck und Pyrmont, the Declaration of Brian Ankenbrandt, the Declaration of James Sigel, and any additional evidence, authority, or argument as the Court may consider on this matter.

DAVIS WRIGHT TREMAINE LLP

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................................ 1

II. FACTUAL AND PROCEDURAL BACKGROUND ........................................................ 1

    A. Proceedings before this Court. ................................................................................ 1

    B. The German court proceedings and potential disclosures. ...................................... 3

III. LEGAL STANDARD ......................................................................................................... 5

IV. ARGUMENT ...................................................................................................................... 5

    A. The material HMD seeks is available in the German patent proceedings. .............. 6

    B. The receptivity of the foreign court to the requested discovery and the nature of the foreign tribunal both counsel against granting the § 1782 application. ............ 7

    C. HMD's 1782 application is an attempt to circumvent the German courts' procedures. ................................................................................................. 8

    D. HMD's discovery requests are unduly intrusive. ..................................................... 9

V. CONCLUSION ................................................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Andover Healthcare, Inc. v. 3M Co.*,
  817 F.3d 621 (8th Cir. 2016) ............................................................................................ 6, 9, 10

*Baxalta Incorporated v. Genentech, Inc.*,
  2016 WL 11529803 (N.D. Cal. 2016) ......................................................................................... 7

*Bayer AG v. Betachem, Inc.*,
  173 F.3d 188 (3d Cir.1999) ........................................................................................................ 5

*CPC Pat. Techs. Pty Ltd. v. Apple Inc.*,
  119 F.4th 1126 (9th Cir. 2024) ................................................................................................... 2

*Cryolife, Inc. v. Tenaxis Med., Inc.*,
  2009 WL 88348 (N.D. Cal. Jan. 13, 2009) ................................................................................. 8

*Dep't of Caldas v. Diageo PLC*,
  925 F.3d 1218 (11th Cir. 2019) .................................................................................................. 5

*Four Pillars Enters. Co. v. Avery Dennison Corp.*,
  308 F.3d 1075 (9th Cir.2002) ..................................................................................................... 5

*In re Ex Parte Appl. of Qualcomm Inc. (Qualcomm)*,
  2016 WL 641700 (N.D. Cal. Feb. 18, 2016) .............................................................................. 7

*In re Ex Parte Apple Inc.*,
  2012 WL 1570043 (N.D. Cal. May 2, 2012) .............................................................................. 5

*In re: Ex Parte Application Varian Med. Sys. Intl. AG*,
  2016 WL 1161568 (N.D. Cal. Mar. 24, 2016) ............................................................................ 6

*In re Ex Parte LG Elecs. Deutschland GmbH*,
  2012 WL 1836283 (S.D. Cal. May 21, 2012) ............................................................................ 6

*In re Microsoft Corp.*,
  No. C06-80038-JF (PVT), 2006 WL 825250 (N.D. Cal. Mar. 29, 2006) ................................... 5

*Intel Corp. v. Advanced Micro Devices, Inc.*,
  542 U.S. 241 (2004) ............................................................................................................ passim

*Khrapunov v. Prosyankin*,
  931 F.3d 922 (9th Cir. 2019) ...................................................................................................... 5

*London v. Does 1-4*,
  279 Fed. Appx. 513 (9th Cir. 2008) ............................................................................................ 9

DAVIS WRIGHT TREMAINE LLP

*Siemens AG v. W. Digital Corp.*,
  2013 WL 5947973 (C.D. Cal. Nov. 4, 2013) ....................................................................... 8, 9

*Via Vadis Controlling GmbH v. Skype, Inc.*,
  2013 WL 646236 (D. Del. Feb. 21, 2013) ............................................................................ 8

**STATUTES**

28 U.S.C.
  § 1782 ........................................................................................................................... passim
  § 1782(a) ............................................................................................................................ 5, 6

DAVIS WRIGHT TREMAINE LLP

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

HMD filed this 28 U.S.C. § 1782 action and served a subpoena seeking disclosure of Apple's extremely confidential agreements with Huawei Technologies Co., Ltd ("Huawei"). HMD insists that it needs Apple to produce these agreements to support its defense in German patent infringement lawsuits Huawei has brought against it, and that HMD cannot compel the production of these agreements from Huawei in Germany.

But HMD's § 1782 application omits critical facts that fatally undermine its request. HMD can and in fact *has* sought to obtain any agreement between Apple and Huawei in the German litigation. The German courts have not yet granted those requests because they have determined that the production of this evidence is not now—and may never be—necessary.

HMD should not be allowed an end-run around the German courts' consideration of these pending discovery requests by coming to the United States and demanding the same from a third party like Apple. In these circumstances, each of the four factors courts consider when evaluating whether to compel production under 28 U.S.C. § 1782 weighs against HMD's request. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004). In particular, while Apple may not be a litigant in the German proceedings, Huawei is, and thus HMD has little need to compel discovery from Apple. Likewise, the German courts' decisions to not rule on HMD's requests for the production of any agreements demonstrates these courts are not now receptive to this evidence, and that HMD is attempting to evade the German courts' procedures. And given the sensitivity of the evidence requested—and the limited confidentiality protections available in Germany if it is exported there—HMD's request is also unduly invasive.

Apple's motion to quash HMD's subpoena should be granted.

**II.     FACTUAL AND PROCEDURAL BACKGROUND**

**A.     Proceedings before this Court.**

On February 3, 2025, HMD filed an *ex parte* application for an order granting leave to take discovery against Apple for use in a foreign proceeding, pursuant to 28 U.S.C. § 1782. Dkt. 1. HMD asserts it needs this discovery for use in three patent infringement actions filed in 2022 by Huawei

1

APPLE INC.'S MOTION TO QUASH SUBPOENA
Case No. 25-mc-80022-EKL

1  against HMD in the Munich District Court in Munich, Germany. *Id.* at 2. HMD sought leave to
2  serve a document subpoena for "all agreements" between Apple and Huawei, including a 2015
3  licensing agreement. *Id.* at 2; Dkt. 1-3. HMD claims this evidence is necessary to support its
4  argument that Huawei cannot obtain injunctive relief because it did not provide HMD proposed
5  license terms that are fair, reasonable, and non discriminatory, or "FRAND." Dkt. 1 at 2.

6      HMD's Application was supported by the declaration of Dr. Andreas von Falck, which
7  asserted that, in the German proceedings, Huawei had produced only certain "'cherry picked'"
8  license agreements. Dkt. 1-1, ¶ 24 ("von Falck Declaration"). The Declaration recounted that HMD
9  had also "applied for a production order requiring Huawei to disclose all agreements with
10 Qualcomm," HMD's "chipset supplier," but these "requests for Huawei's agreements with
11 Qualcomm were not granted" and "the court has not given a reason for this." *Id.*, ¶¶ 26-27. The
12 Declaration asserted: "In light of this, it is not possible for HMD to obtain further agreements
13 concluded by Huawei based on Section 142 German Civil Code of Procedure." Dkt. 1-1, ¶ 27.

14     Magistrate Judge Virginia K. DeMarchi issued a scheduling order directing Apple to file a
15 response to HMD's application. Dkt. 8. The order specified this response would be "without
16 prejudice to [Apple's] opportunity to file a motion to quash or modify the subpoena, if one is issued."
17 *Id.* Apple filed the requested response on February 19, 2025, taking no position on HMD's
18 Application. Dkt. 14, at 2. Apple noted it was "currently unsure whether and in what circumstances
19 the discovery HMD seeks from Apple could be obtained in the German proceedings." *Id.* at 2. Apple
20 expressly reserved "all rights and objections with respect to HMD's proposed subpoena if it should
21 issue." *Id.* (citation omitted). Observing that "respondents in § 1782 proceedings may move to quash
22 or otherwise object to subpoenas issued after the initial § 1782 application is granted," Apple
23 requested that any order granting HMD's application "recognize that Apple may subsequently move
24 to quash or otherwise challenge the Subpoena." *Id.* at 2-3 (citing *CPC Pat. Techs. Pty Ltd. v. Apple
25 Inc.*, 119 F.4th 1126, 1134 (9th Cir. 2024)).

26     On May 14, 2015, the Court granted HMD's Application. Dkt. 19 ("Order"). The Court
27 began by recounting the facts in HMD's Application, including the assertion that "HMD cannot
28 obtain Huawei's license with Apple in the German actions." *Id.* at 2. The Court then held that HMD

DAVIS WRIGHT TREMAINE LLP

had met all three of § 1782's statutory threshold requirements. *Id.* at 4. Based on HMD's representations, the Court also found that all four discretionary considerations set forth in *Intel Corp. v. Advanced Micro Devices, Inc.,* 542 U.S. 241 (2004) favored relief under § 1782. Order 4–5. The Court expressly noted its Order was "without prejudice to any argument that may be raised in a motion to quash or other motion from Apple or Huawei." *Id.* at 5.

On May 16, 2025, HMD served Apple with a subpoena commanding Apple to produce, by May 29, 2025, "[a]ll agreements between you and Huawei, including the 2015 agreement referred to on page 11 of the Huawei White Paper entitled 'The Foundation of Innovation' (2020)[.]" *See* Decl. of James Sigel ("Sigel Decl."), Ex. 1 (Subpoena); Dkt. 20 (Proof of Service).

**B.  The German court proceedings and potential disclosures.**

A complete understanding of the German proceedings is critical to evaluate the propriety of HMD's subpoena. HMD's Application omitted certain key facts regarding the ongoing German litigation. As Dr. von Falck described, two of Huawei's three German lawsuits (Matters 1 and 3) were dismissed on the basis of non-infringement. *Id.* ¶ 7. HMD had sought production from Huawei of a Qualcomm license agreement in those lawsuits. *Id.* at ¶ 26.

But HMD did not seek *only* the license agreements between Huawei and Qualcomm. HMD also filed requests for production of other license agreements—including any Huawei-Apple license agreements. Waldeck Decl. ¶ 8. And the Munich District Court did not reject these requests for production. *Id.* at ¶¶ 10, 13. Instead, the District Court simply declined to rule on them because there was no need to address the FRAND defense to which this evidence might be relevant in light of the District Court's finding that HMD did not infringe Huawei's patents. *Id.* In declining to rule on these requests, the District Court adhered to German courts' general approach of declining to order the production of such potentially sensitive materials until consideration of those materials becomes necessary. *Id.* ¶¶ 10–13.

Huawei has appealed the Munich District Court's decisions in Matters 1 and 3. Von Falck Decl. ¶ 7; Waldeck Decl. ¶ 9. On appeal, HMD has renewed its requests for production of Huawei's license agreements—including any agreements with Apple. Waldeck Decl. ¶ 14. The appellate court

3

APPLE INC.'S MOTION TO QUASH SUBPOENA
Case No. 25-mc-80022-EKL

may order production of this evidence if it determines that information is necessary to decide the case. *Id.* ¶ 15. The requests remain pending. *Id.* ¶¶ 14-15.

Much the same is true in the third patent lawsuit (Matter 2), which is still before the Munich District Court. Von Falck Decl. ¶ 9. HMD also requested any Huawei-Apple agreements in those proceedings (in addition to the Huawei-Qualcomm agreements). Waldeck Decl. ¶ 8. The District Court has not ruled on those requests. *Id.* ¶ 12. A decision is currently scheduled for June 27. *Id.* ¶ 13. The District Court will retain the ability to grant HMD's request for production of any Apple-Huawei agreements if needed—such as if the Court does not rule in HMD's favor because of non-infringement (as it did in the two other lawsuits). *Id.* ¶ 13.

Also relevant here are the relatively limited protections German courts afford to sensitive information. In U.S. courts, especially sensitive information is shielded from the public, and is routinely limited to outside attorneys' eyes only.[1] But German law affords all parties a right to view the evidence in the case, meaning that it is not possible to obtain a court order from a German court with an "outside attorneys' eyes only" classification. Waldeck Decl. ¶ 17.

These limited protections are of particular concern given the sensitivity of the evidence HMD seeks. While HMD requests "all" agreements between Apple and Huawei, its focus is on what it calls Apple's "standard-essential patent" license agreements with Huawei, which contain financial terms that might be relevant to HMD's FRAND defense in Germany. Sigel Decl., Ex. 1; Dkt. 1 at 2. Apple maintains such license agreements in the strictest confidence. Ankenbrandt Decl. ¶ 4. The competitive harm from disclosing the requested financial information would be particularly great, as Apple's competitors and other patent holders could use this information to Apple's disadvantage. *Id.* ¶ 5. These license agreements thus have strict confidentiality provisions, and may be produced during the course of litigation only under the most highly confidential restrictions available, as embodied in a court order limiting disclosure to outside counsel. *Id.* ¶ 6.

---

[1] *E.g.*, *Model Protective Order for Litigation Involving Patents, Highly Sensitive Confidential Information and/or Trade Secrets*, Northern District of California, *available at*: https://cand.uscourts.gov/model-protective-orders (last visited May 28, 2025).

4
APPLE INC.'S MOTION TO QUASH SUBPOENA
Case No. 25-mc-80022-EKL

### III. LEGAL STANDARD

Pursuant to 28 U.S.C. § 1782, a U.S. district court may order a person residing or found within its district to produce documents or testimony for use in foreign legal proceedings, unless the disclosure would violate a legal privilege. *Id.* § 1782(a); *Intel*, 542 U.S. at 249. When the statutory requirements of § 1782 are satisfied—as Apple does not dispute is the case here—the district court "is not required to grant the application, but instead retains wide discretion to determine what discovery, if any, should be permitted." *In re Ex Parte Apple Inc.*, 2012 WL 1570043, at *1 (N.D. Cal. May 2, 2012) (citing *Intel*, 542 U.S. at 264; *Four Pillars Enters. Co. v. Avery Dennison Corp.*, 308 F.3d 1075, 1078 (9th Cir.2002)).

Courts consider four non-exhaustive factors (often called the *Intel* factors) in determining whether to grant an application. These factors are: (1) whether "the person from whom discovery is sought is a participant in the foreign proceedings"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court of agency abroad to U.S. federal-court judicial assistance"; (3) whether the discovery request is an "attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the discovery requested is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264-65. HMD bears the burden of demonstrating that these factors are satisfied. *In re Microsoft Corp.*, No. C06-80038-JF (PVT), 2006 WL 825250, at *2 n.3 (N.D. Cal. Mar. 29, 2006).[2]

### IV. ARGUMENT

The Court should quash HMD's subpoena in full because each *Intel* factor weighs against the requested discovery. *First*, the information HMD seeks through its subpoena is available in the

---

[2] While some decisions have reached a contrary conclusion on the burden of proof, these decisions fail to appreciate the distinctions between § 1782 proceedings and ordinary discovery. *E.g.*, *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 190 (3d Cir. 1999) (holding party resisting § 1782 application bears burden because party resisting discovery in domestic litigation ordinarily does); *see also Dep't of Caldas v. Diageo PLC*, 925 F.3d 1218, 1223 (11th Cir. 2019) (rejecting decisions like *Bayer* and holding neither side bears the burden of proof). Where, as here, the requested discovery is the ultimate relief sought in a case, the party seeking judicial relief should bear the burden of proof. *Cf. Khrapunov v. Prosyankin*, 931 F.3d 922, 926 (9th Cir. 2019) (Section 1782 applicant bears the burden of demonstrating that § 1782's statutory prerequisites are satisfied).

1 German proceedings from a party to those proceedings, Huawei. *Second*, the fact that the German 2 courts have not yet ordered this discovery undermines any claim that they are receptive to it, while 3 German courts' limited procedural protections for confidential materials demonstrate one reason 4 they might hesitate to order such production. *Third*, HMD's attempt to use U.S. courts to 5 prematurely gather this information would circumvent the German courts' balancing of these 6 considerations and undermine their practice of phased discovery. *Fourth*, the extremely sensitive 7 nature of the information HMD seeks, coupled with the lack of sufficient confidentiality protections 8 in German courts, far outweighs any purported need for HMD to obtain it here for use in Germany.

### A.  The material HMD seeks is available in the German patent proceedings.

The first factor—whether "the person from whom discovery is sought is a participant in the foreign proceedings" (*Intel*, 542 U.S. at 264)—might initially appear to favor HMD. *See* Order 4. But the ultimate inquiry under this *Intel* factor is whether the evidence HMD seeks here is available in Germany. Because *Huawei* is a party to the German proceedings and may be ordered to produce the requested evidence, this factor weighs against HMD.

The purpose of the first *Intel* factor is to determine the "need" for the requesting party to come to the United States and seek discovery rather than seeking it in the foreign litigation. *Intel*, 542 U.S. at 264. As the Supreme Court explained, "the need for § 1782(a) aid generally is not as apparent" when the foreign tribunal "can itself" order production of the requested evidence. *Id.*; *see Andover Healthcare*, *Inc. v. 3M Co.*, 817 F.3d 621, 623 (8th Cir. 2016) ("When a foreign court 'can itself order' production, *Intel* teaches that the district court properly may deem the need for § 1782(a) discovery less 'apparent.'"). Thus, "[a]lthough the case law at times refers to whether the 'person' is within the foreign tribunal's jurisdictional reach, the key issue is whether the material is obtainable through the foreign proceeding." *In re: Ex Parte Application Varian Med. Sys. Int'l. AG*, 2016 WL 1161568, at *3 (N.D. Cal. Mar. 24, 2016) (cleaned up). Courts find this factor weighs against discovery when the evidence can be obtained in the foreign proceeding even where, as here, the subpoena is directed to a non-party. *E.g.*, *In re Ex Parte LG Elecs. Deutschland GmbH*, 2012 WL 1836283, at *2 (S.D. Cal. May 21, 2012) (finding this factor weighed against allowing discovery directed to a non-party to the foreign proceeding because the information sought could be obtained

6

APPLE INC.'S MOTION TO QUASH SUBPOENA
Case No. 25-mc-80022-EKL

from a party to the foreign proceeding); *In re Ex Parte Application of Qualcomm Inc. (Qualcomm)*, 2016 WL 641700, at *7 (N.D. Cal. Feb. 18, 2016) (courts should "focus on whether the evidence 'is available to the foreign tribunal,' because in some circumstances, evidence may be available to a foreign tribunal even if it is held by a non-participant to the tribunal's proceedings").

Assessing HMD's "need" to seek discovery here of any agreement between Apple and Huawei is straightforward. Huawei is a party to the German litigation, and HMD could seek—and in fact *has* sought—the very same discovery from Huawei in Germany. Waldeck Decl. ¶ 8. Those requests remain pending, and they will be resolved by the German courts if and when it is necessary for the Court to reach HMD's FRAND defense. *Id.* HMD's ability to obtain this evidence in the German litigation defeats any claim of "need" for HMD to seek the same evidence here.

**B.      The receptivity of the foreign court to the requested discovery and the nature of the foreign tribunal both counsel against granting the § 1782 application.**

The second *Intel* factor—"the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court of agency abroad to U.S. federal-court judicial assistance" (*Intel*, 542 U.S. at 264)—weighs against discovery for two reasons: the German courts have indicated they are not currently receptive to the requested evidence, and German courts lack adequate protections for the sensitive information HMD seeks.

*First*, while Germany courts may *generally* be receptive to evidence obtained through § 1782 proceedings, as HMD has contended (*see* Order 4), the German courts have done nothing to suggest that they are currently receptive to the specific evidence HMD seeks here. HMD's requests for these documents remain pending before the German courts, which have so far not ruled on them because the courts have not deemed this evidence necessary for deciding the cases. Waldeck Decl. ¶¶ 10–13. If the courts decides the information is necessary, they can order Huawei to produce it; but if they decide the information is not necessary, then the German court is not receptive to it. This weighs against granting HMD's requested discovery. *See Baxalta Inc. v. Genentech, Inc.*, 2016 WL 11529803 *6 (N.D. Cal. 2016) (second *Intel* factor weighed against § 1782 applicant where foreign tribunal was aware of applicant's attempts to obtain evidence but had not yet requested that

7
APPLE INC.'S MOTION TO QUASH SUBPOENA
Case No. 25-mc-80022-EKL

evidence, because the court had not decided threshold question that could render that evidence unnecessary).

*Second*, German courts have lower protections for confidential information than American courts. Waldeck Decl. ¶¶ 16-20; *see also infra* 9–10. As courts considering § 1782 applications have thus recognized, where confidential information is sought for use in Germany, the nature of the foreign tribunal weighs against discovery. *E.g.*, *Via Vadis Controlling GmbH v. Skype, Inc.*, 2013 WL 646236, at *3 (D. Del. Feb. 21, 2013).

**C.     HMD's 1782 application is an attempt to circumvent the German courts' procedures.**

The third factor—whether the discovery request is an "attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country" (*Intel*, 542 U.S. at 265)—weighs against HMD, which is attempting to do just that. Again, HMD could and did seek this discovery from Huawei in Germany. Waldeck Decl. ¶ 8. The German courts have not yet ruled on HMD's requests because discovery of this sensitive information has not yet been—and may never be—necessary. *Id.* ¶¶ 10–13. In these respects, the German courts are adhering to their general practice of not ordering third-party discovery unless the requested information becomes necessary to decide the case. *Id.* ¶¶ 10–11.

Courts have declined to allow this kind of short-circuiting, refusing to compel production under § 1782 where, as here, an applicant sought to avoid phased discovery proceedings by seeking to "prematurely gather discovery information" in the United States. *E.g.*, *Siemens AG v. W. Digital Corp.*, 2013 WL 5947973, at *4 (C.D. Cal. Nov. 4, 2013); *see Via Vadis*, 2013 WL 646236, at *2 (third *Intel* factor weighed against discovery where foreign court had not required production of requested materials); *Cryolife, Inc. v. Tenaxis Med., Inc.*, 2009 WL 88348, at *4 (N.D. Cal. Jan. 13, 2009) (similar). Similarly here, the German courts' practice is to phase discovery and order production of the sort HMD seeks only if necessary, and the German courts have specifically held HMD's requests in abeyance until that point is reached (if it ever is). Waldeck Decl. ¶¶ 8–13. This Court should not allow HMD to circumvent the German policy reflected in these decisions by coming to the United States and prematurely demanding the same information from Apple.

DAVIS WRIGHT TREMAINE LLP

1 **D.  HMD's discovery requests are unduly intrusive.**

2 The fourth factor—whether the discovery requested is "unduly intrusive or burdensome" (*Intel*, 542 U.S. at 265)—also weighs against HMD. Determining whether § 1782 discovery would be "unduly" burdensome requires balancing "the need for the evidence" with the "invasion required." *London v. Does 1-4*, 279 F. App'x. 513, 514-15 (9th Cir. 2008). Because HMD seeks highly sensitive information that the German courts have determined is not yet needed, that balance tips heavily against HMD.

*First*, the "invasion required" by HMD's request is substantial. *Id.* Apple maintains its license agreements in the strictest confidence because their disclosure would severely impact its competitive position. Ankenbrandt Decl. ¶¶ 4–5. That is particularly true of the information about financial terms that HMD demands. *Id.* Allowing any agreements to be exported for use in Germany could cause Apple significant harm given the limited protections available for confidential information in Germany. Indeed, while such agreements contain negotiated provisions to ensure that their disclosure is limited at most to parties' outside counsel (*id.* ¶ 6), in Germany there is generally no way to limit disclosure in this manner—meaning HMD (itself a competitor) and potentially others might gain access to Apple's sensitive information. Waldeck Decl. ¶¶ 18–19. Although Apple could attempt to address these concerns with a U.S. protective order, such an order is not binding on or enforceable by a German court, nor is it clear how HMD could be meaningfully sanctioned in the United States for any violation of the protective order. *See Baxalta*, 2016 WL 11529803, at *8 (granting motion to quash there were "serious" "questions of confidentiality" protections for the requested information); *Andover*, 817 F.3d at 624 (rejecting contention that U.S. protective order would resolve concerns with use of sensitive information in German proceeding).

*Second*, on the other side of ledger, HMD has not shown a substantial need for this extremely confidential information. To the contrary, the German courts have thus far determined that this evidence is *not* needed. Two of the three suits against HMD have been resolved in HMD's favor without the German courts reaching the FRAND issue, and the third case may soon be resolved on similar grounds. Waldeck Decl. ¶¶ 9, 13. If it does become necessary to address HMD's FRAND defense, the German courts retain the ability to rule on HMD's pending request for the production

9

APPLE INC.'S MOTION TO QUASH SUBPOENA
Case No. 25-mc-80022-EKL

DAVIS WRIGHT TREMAINE LLP

1  of any license agreements from Huawei. Waldeck Decl. ¶¶ 13, 15. There is thus no need for HMD to obtain this evidence from Apple in the United States.

In these respects, the facts here parallel those the Eighth Circuit confronted in *Andover Healthcare*. There, the petitioner filed a § 1782 application seeking certain sensitive product information that it had also requested in German patent proceedings, though the German court had not yet ruled on its requests. 817 F.3d at 621-22. The Court affirmed the denial of the § 1782 petition, emphasizing the confidentiality of the information sought and the limited protections for sensitive information in German courts—which lack a "firm procedure . . . to prevent disclosure" of trade secrets and "do not frequently grant requests to exclude confidential information from their decisions." *Id.* at 623-24. The Court explained that the German court could itself determine whether the need for the sensitive information was worth the risk of disclosure, as it would "examine first whether the case can be resolved without compelling discovery of sensitive trade secret." *Id.* at 623. In these circumstances, "the sensitive nature of the information sought" weighed "against an order for discovery." *Id.* at 624.

The same reasoning applies here. To paraphrase *Andover Healthcare*, "[t]he German court[s are] in a position to order the requested discovery if the information is needed, and the German court[s are] best positioned to assess whether any disclosure can be accomplished without jeopardizing the sensitive [license agreements] involved." *Id.* HMD's demand that Apple produce this sensitive information in the United States should be rejected.

## V.   CONCLUSION

Apple's motion to quash the subpoena should be granted.

DATED this 29th day of May, 2025.

>                    Davis Wright Tremaine LLP
>
>                    s/ *James Sigel*
>                    James Sigel
>                    Joseph Elie-Meyers
>
>                    *Attorneys for Respondent Apple Inc.*

APPLE INC.'S MOTION TO QUASH SUBPOENA
Case No. 25-mc-80022-EKL

10