1    JAMES R. SIGEL (State Bar No. 288478)
     jamessigel@dwt.com
2    DAVIS WRIGHT TREMAINE LLP
   50 California Street, 23rd Floor
3    San Francisco, CA 94111
   Telephone: (415) 276-4850
4

5    JOSEPH ELIE-MEYERS (State Bar No. 325183)
     josepheliemeyers@dwt.com
6    DAVIS WRIGHT TREMAINE LLP
   350 South Grand Avenue, 27th Floor
   Los Angeles, California 90071
7    Telephone: (213) 633-6800

8    Attorneys for Respondent
   APPLE INC.

9

10

11

12            **IN THE UNITED STATES DISTRICT COURT**

13            **NORTHERN DISTRICT OF CALIFORNIA**

14

15    IN RE: *EX PARTE* APPLICATION OF HMD    Case No. 25-mc-80022-EKL
   GLOBAL OY FOR AN ORDER UNDER 28
16    U.S.C. § 1782 TO OBTAIN DISCOVERY FOR
   USE IN FOREIGN PROCEEDINGS    **SUPPLEMENTAL DECLARATION OF**
17                              **WOLRAD PRINZ ZU WALDECK UND**
                                    **PYRMONT IN SUPPORT OF APPLE**
18                                  **INC.'S MOTION TO QUASH SUBPOENA**
                               **ISSUED PURSUANT TO 28 U.S.C. § 1782**
19

20

21

22

23

24

25

26

27

28

I, Wolrad Prinz zu Waldeck und Pyrmont, declare under penalty of perjury under the laws of the United States as follows:

1.    I am an attorney admitted to practice in Germany and a partner in the Dusseldorf office of the law firm Freshfields PartG mbB.

2.    I previously submitted a declaration in the above captioned proceedings in support of Apple Inc.'s motion to quash HMD's subpoena (the "*First Declaration*").

3.    I make this supplemental declaration based on my own personal knowledge and based on documents that I have reviewed, in particular HMD's opposition and the supporting declaration of Andreas v. Falck filed on June 12, 2025 (hereinafter "*von Falck Declaration II*"). If called as a witness, I could competently testify to all facts within my personal knowledge.

## I.    MUNICH PROCEDURE IN PATENT LITIGATION

4.    The von Falck Declaration II emphasizes that the guidelines issued by the Munich District Court do not override the requirements of civil procedural law, which mandate that all submitted evidence be duly considered. I wish to clarify that I did not suggest otherwise. Rather, my reference to these guidelines aimed to illustrate the reason the court has not yet ruled on the evidentiary request in the pending proceedings.

5.    To further clarify, the guidelines in question do not supersede the applicable civil procedural rules. Instead, they express the general policy typically observed by the Munich District Court and help to explain the court's approach in this instance, i.e., not (yet) having ruled on HMD's request for disclosure.

## II.    DISCLOSURE OF DOCUMENTS UNDER GERMAN PROCEDURAL LAW

6.    In response to the assertions in paragraphs 5 and 8 of the von Falck Declaration II, I am not aware of a basis for interpreting Section 142 of the German Code of Civil Procedure as being restricted solely to documents physically located in Germany—or, in limited cases, within the European

Union. I note that the von Falck Declaration II does not indicate any basis for interpreting Section 142 in this manner, either. German procedural law does not confine the issuance of a production order by territorial boundaries. Once the relevance of a document to the disputed issues is established, German courts retain the discretion to order its production regardless of its physical location. *See, e.g.*, Gebauer/Wiedmann, Commentary on European Civil Law (EurZivilR)/*Huber*, Art. 1 EuBVO, mn. 45; Geimer, International Civil Procedure Law/*Geimer*, Chapter 8, mn. 440.

7.      Regarding the enforcement authority of German courts concerning production orders, it is true that these powers differ significantly with regard to scope and coercive measures available in legal systems such as that of the United States. Nonetheless, even though a German court may lack the direct means to compel compliance, that limitation does not shield a party from facing the consequences of non-compliance. Pursuant to Section 286 of the German Code of Civil Procedure, a failure of a litigating party to produce documents that have been requested and deemed relevant may permit the court to draw an adverse inference—such as presuming that the withheld documents would have supported the opposing party's contentions. *See, e.g.*, Munich Commentary on the German Code of Civil Procedure (MüKoZPO)/*Fritsche*, §§ 142-144 ZPO, mn. 16-17. This evidentiary consequence provides a strong incentive for compliance even absent "traditional" coercive mechanisms.

## III.     DOCUMENT PRODUCTION OBLIGATIONS PERTAINING TO HUAWEI

8.      In all three proceedings before the Munich District Court and the Munich Court of Appeal, HMD has maintained its production requests for these documents which remain pending. As set out in my First Declaration (*see* ¶¶10-12) and indicated in the Guidelines in Patent Proceedings, the regular practice of the Munich District Court is to order the production of evidence by another party only when and to the extent it is needed to determine the issues in dispute.

9.      In response to von Falck's comment on HMD's inability to more concretely specify the licence agreements it seeks production of (von Falck Declaration II, ¶ 6), I do not believe that HMD's

current identification would be deemed insufficient by the court and result in a rejection of the request. I note that von Falck does not suggest otherwise. It is well established under German legal principles that the precise identification of every individual agreement is not a prerequisite for the issuance of a valid production order. Courts have, in established practice, ordered the production of license agreements defined by specific categories—even in the absence of exact names or dates—so long as a clear connection exists between the document's content and the relevant factual assertions. *See, e.g.*, Musielak/Voit, Commentary on German on the German Code of Civil Procedure/*Stadler*, § 142 ZPO, mn. 4a; Munich Commentary on the German Code of Civil Procedure (MüKoZPO)/*Fritsche*, §§ 142-144 ZPO, mn. 11. Moreover, HMD has provided an unequivocal factual basis for a production order by specifying the agreements in question. In the present case, HMD possesses knowledge of both the parties and technologies covered by the license agreement(s), thereby rendering them sufficiently identifiable. In my own practice, I have seen more general descriptions of (categories of) license agreements both in requests for production under § 142 Code of Civil Procedure, and in court orders granting these requests.

10.     I note that von Falck, while describing it as a legal possibility, does not actually suggest that the Huawei parties would not comply with an order of production, and I am not aware of any legal or factual basis that would suggest that it would defy such an order. As mentioned above (*see* ¶ 7), the court is empowered under Section 286 of the German Code of Civil Procedure to draw adverse inferences in case of non-compliance. In addition, Huawei is a regular litigant in the German patent courts including the Munich District Court, and the prospect of being in the same court again typically acts as a further restraint against not complying with a court order.

11.     In response to ¶ 11 of the von Falck Declaration II, I note that it does not provide any basis for the suggestion that the Munich Court of Appeal would not order the production of the license agreements if it deemed them necessary to resolve the dispute. I referred to a decision in my First Declaration (see ¶ 15), which indicates the Munich Court of Appeal would not disregard the request for

production of comparable license agreements in a FRAND case unless there are clear reasons why the agreements were not comparable and would not need to be considered. I stand by that assessment.

12.    While the decision is not published, it can, like any other German court decision, be requested from the court which issued it and will be provided, potentially in redacted form. I am enclosing an abbreviated redacted English translation as Exhibit 1p to this declaration. The highlighted passages on pages 27–28 provides the basis for my expectation.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 20 June 2025, at Cologne, Germany.

Wolrad Prinz zu Waldeck und Pyrmont

# EXHIBIT  1p

NON-CONFIDENTIAL
ENGLISH READING T
RANSLATION

Authenticated copy

# Higher Regional Court Munich

Docket no.: ██████████████



In the proceedings



due to injunction and others (██████████████)

the Munich Higher Regional Court - Cartel Senate (6th Senate) - by the presiding judge at the Higher Regional Court Retzer, the judge at the Higher Regional Court Dr. Ruhwinkel and the judge at the Higher Regional Court Lehner on 29 October 2020 issue the following



The Regional Court did not consider the submitted objections of Defendant striking:

The right to injunctive relief or the right to recall cannot be countered by the objection of disproportionality (LGU page 41/42, 43/44).

The claims for injunctive relief and recall are also not opposed by an objection under cartel law or a contractual compulsory license. Plaintiff holds a dominant market position with regard to the H.264/AC standard and is therefore the addressee of Article 102 TFEU (LGU page 45/48). However, an abuse of this position could not be established. An obligation to license presupposes that the patent user is also willing to take a license on the patent on reasonable and non-discriminatory terms and does not pursue delaying tactics in the course of the negotiations. On the basis of the principles developed in the case law of the ECJ and the Federal Court of Justice, it is

to be established that Defendant is not willing to license. Furthermore, there would be substantial doubts that their counteroffers were FRAND. In addition, an examination of obviousness with regard to Plaintiff's offer of 18 March 2019 showed that it was not obviously unFRAND.

When determining the willingness to take a license, it is important to consider whether and, if so, when a counteroffer was made (LGU page 49/51). This would also not be contradicted by the FRAND guidelines of the Munich patent litigation chambers, according to which existing deficits of the parties could be eliminated by the end of the oral proceedings. The possibility to eliminate individual deficits should only benefit the bona fide party. The infringer, however, who pursues a delaying tactic from the beginning, taking into account the history of the negotiations, will not automatically go from Saulus to Paulus by making a FRAND-compliant license offer during the trial. He can no longer undo his unwillingness to license by submitting a counter-offer that might be FRAND-compliant at a later date (LGU pp. 50/54).

According to Plaintiff's letter dated ▮▮▮▮▮▮▮▮ (Exhibit K 10), Defendant was informed of the patent infringement. No further information was required. The behavior shown by Defendant afterwards (LGU page 54/56) does not indicate a serious willingness to license on the part of Defendant. Defendant did not clearly and unambiguously indicate to Plaintiff that it was willing to conclude a license agreement with Plaintiff on FRAND terms.

- Defendant's e-mail of ▮▮▮▮▮▮▮▮ (Exhibit K 13) could not be regarded as a sufficient declaration of willingness to license (LGU, page 56 f.).

- Nothing else applies to the letter of ▮▮▮▮▮▮▮▮ (FBD-V 110), especially since in this letter the infringement of Plaintiff's patents was denied (LGU page 57).

- Something else does not result from the letter of ▮▮▮▮▮▮▮▮▮▮▮▮▮ (FBD-V 111).

Furthermore, it cannot be disregarded that it is not obvious why Defendant's counteroffer of ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ could not have been made ▮▮▮▮▮. In particular, it is not clear to what extent the extensive information requested in the letters of ▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮ was necessary for the submission of the counter-offers, especially since Defendant considers Plaintiff's patent pool to be manageable, but nevertheless did not consider itself able to submit a counter-offer ▮▮▮▮▮▮▮.

This assessment is confirmed by further statements by Defendant in the proceedings if it takes the view that not Defendant but its suppliers are the right contacts for licenses.

Furthermore, the counteroffers of Defendant of ██████████████████ are not FRAND. The MPEG-LA Pool License Agreement on which Defendant relies also provides for an obligation to pay for uses already made. ████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████  █  ██████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████ According to this decision, the patentee should be entitled to determine the license fees - however, with the restriction that it is reviewable according to § 315 BGB. This means that the patent holder fixes the license fees and the licensee can then - at his own expense and risk - have them reviewed in court. ██████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████

Even if a willingness to license and a FRAND-compliant offer were to be assumed in favor of Defendant, the statutory antitrust objection would not apply. The examination of Plaintiff's offer of ████████████████, which - due to Defendant's unwillingness to license - only has to be carried out for obviousness, shows that it is not unFRAND. Defendant has the burden of proof and demonstration that a submitted offer by Plaintiff is un FRAND. Plaintiff had a secondary burden of proof with regard to its licensing practise, insofar as the information was in its sole possession. If the infringer rejects a license offer, it is only burdened with the objection of a compulsory license under antitrust law if it has itself submitted a counter-offer which is in any case not obviously un FRAND.

Plaintiff's offer is not obviously un FRAND, since it was accepted by numerous companies. ████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████



The other license agreements, in particular the license agreements explained in the letter dated June 3, 2020, are irrelevant. Thus, in order to convince the chamber that the existing license agreements with ███████████████ were not relevant for the present situation, Plaintiff had explained that they had each been concluded in a specific context. Accordingly, the agreement with █████ also concerns a telecoms cross-licence and does not cover laptops, PCs and tablets (K 44). It was also concluded in order to settle a dispute. The license with █████ was concluded in the context of a company acquisition.

The licensing model of the MPEG-LA patent pool does not contradict the assumption of FRAND conformity (LGU page 65 ff.).

The contractual compulsory license objection raised by Defendant also does not prevail (LGU, page 68/70).

The Regional Court did not consider the conditions for a stay of proceedings to be met (LGU, pp. 70/80). With regard to the alleged inadmissible extension (LGU, page 77 f. under 1.), according to which claim 23 of the original application provides for the use of intermediates, but claim 8 feature 6.2.b) of the patent in suit  provides for the use of interpolated values, the Regional Court stated:

Federal Court of Justice. In its "FRAND Objection" decision, the BGH confirmed that this regime continues to exist independently of the compulsory license objection under antitrust law in accordance with the case law of the ECJ (Huawei /ZTE). On the other hand, this counter-offer confirms Defendant's willingness to license according to Huawei.

The Regional Court had obviously examined the compulsory license objection alone on the basis the requirements of the ECJ and had wrongly faded out the continued validity of the antitrust law compulsory license objection according to Orange book. In particular, the fact that the Regional Court, even if a FRAND counter-offer by Defendant was assumed, only examined Plaintiff's offer in terms of its obviousness, proves that it did not even consider an examination based on the Orange Book regime. The decision of the BGH shows that the willingness to license can be proven according to the criteria of the Huawei and Orange Book decisions. The Federal Court of Justice also does not set any qualifications with regard to a point in time by which the submission of such an offer must be considered. In addition, there is the possibility to justify the compulsory license agreement under antitrust law on the basis of the criteria resulting from the Huawei decision.

In addition to the provision of an Orange Book offer, Plaintiff had invoiced and provided security on ▮▮▮▮▮▮. Thus, it had fulfilled the requirements of the Orange Book.

Also on the basis of the Huawei decision, the Regional Court wrongly rejected the objection to the compulsory license under antitrust law. The behavior of Defendant did not prove to be a delaying tactic. The Regional Court had misjudged the three features considered by the Federal Court of Justice to be decisive in this respect. The purpose of the willingness to license is to prevent a

licensee from preventing negotiations until the expiration of the term of protection of the patent to be licensed. Furthermore, the Federal Court of Justice stated that in accordance with the High Court, only those who are willing to accept a FRAND license, regardless of what FRAND actually means in the concrete case, are willing to license. Thirdly, the Federal Court of Justice considered the counter-offer sent as possible evidence of the willingness to conclude a license agreement on FRAND terms, in principle irrespective of the question at what time and in what procedural context it was made.

On this basis, the Regional Court had misjudged Defendant's willingness to license for a variety of reasons.

With the counter-offer of ████████, Defendant had submitted to any regulation that an ordinary court would consider FRAND.

This counteroffer shows that Defendant has no interest in delaying the infringement proceedings pending in Germany or elsewhere until the expiration of the patent or even the entire alleged H.264 portfolio to be licensed.

The Regional Court makes an incorrect and one-sided assessment of the negotiation history, whereby it also contradicts the "Guidelines on the handling of the compulsory license objection under cartel law according to Huawei v. ZTE within the Munich proceedings in patent litigation" when it refers to the correspondence in which Defendant questioned the infringement or standard essentiality.

In addition, Plaintiff's license offer of ████████ was obviously unFRAND. It was already incorrect that the Regional Court only carried out an examination for obviousness. The ECJ's case law, however, requires that Plaintiff's license offer be fully reviewed for FRAND, in the order before the review of the counter-offer.

The Regional Court had also obviously failed to recognize that the license offer of ████████ clearly discriminated against Defendant in comparison to its direct competitors ██████ and ██████ Even the extrapolation of the publicly known license rates of these two licensees of Plaintiff shows a considerable discrepancy to the license rate demanded from Defendant, which also cannot be explained by the fact that these contracts "were each concluded in a specific context". For ████████, between ████████████████████████ are expected to be sold worldwide

between 2014 and 2019. Based on a license rate of ████, this would result in a total license burden of ██████, which is incompatible with the fact that ████ has only paid ████████ for the licensing of a much more extensive patent portfolio. According to Plaintiff, ████ only pays license fees for cell phones. Within the framework of a cross-licensing agreement, ████ made a cash advance payment in the equivalent of ████████████. ██████████, the year the agreement was concluded, ██████████████████████████. The total license load amounts to ██████████, which is half of the license fee paid. In addition, ████ does not pay H.264 license fees for laptops, PCs and tablets. The discrimination of Defendants already results from the fact that Plaintiff has granted ████ a de facto free license.

The Regional Court had misjudged that the demanded license fee at a value of ████ was exploitative. It is ██████████████████████ as high as the pool license fee of the MPEG LA H.264 pool, which is accepted on the market and considered FRAND. The reasons given by the Regional Court in this respect could not justify the significant disproportion to the license fee demanded by Plaintiff.

The Regional Court erred in law in assuming that the license agreements submitted by Plaintiff prove that its offer is not obviously unFRAND. ████████████████████████████████
████████████████████████████ ████████████████████
████████████████████████████████████████████
████████████████████████████ ████████████████
████████████████████████████████████████████
████████████████████████████████

The decision of the Regional Court is based on a violation of the principle of orality (§ 128 ████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████

████████████████████████████████████████████
████████████████████████

████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████



Intervener agrees with the applications. She is of the opinion that it is clear from the undisputed facts of the case that at least the attacked embodiments, which used components supplied by her, did not make use of the patent in suit. The Regional Court correctly concluded that the claimed interpolator must in fact be able to perform the multiplication required for weighting, even if the weighting to be multiplied is ultimately "1" (LGU, page 37, 2nd paragraph). However, the LGU did not respond to the undisputed submission that the attacked devices did not have the multiplication software required to calculate a weighted sum, but could only calculate a simple, unweighted sum, and attributed a weighting factor of "1" to the products of the intervener. This was a manifest error of law.

It is also a manifest error of law if the Regional Court assumes that Defendant, at the end of the oral hearing, was unwilling to take a license, although a first license offer had already been made in January 2020, which was adjusted in April 2020. This is in violation of the standard of the decision of the ECJ Huawei. The decision of the Federal Court of Justice "FRAND objection" was misinterpreted, in particular the still accepted German case law regarding a "cure" for omissions within the Huawei duties program was disregarded. The declaration of willingness to take a license on FRAND terms should not be subject to too high requirements. In this respect, consideration should also be given if - as in the present case - Plaintiff's license offer significantly differs significantly from the license fees demanded by established licensors for comparable patent portfolios on the same technology. Anyone submitting a binding license offer that satisfies the FRAND conditions is by definition willing to license. The guidelines of the patent litigation chambers of the Regional Court are likely to be based on such assumptions. According to these traditional principles, Defendant is willing to license without further ado. It was not to be assumed that the Federal Court of Justice in its decision FRAND Objection would deviate from the requirements

according to the Huawei decision. Rather, the Federal Court of Justice affirmed an unwillingness to license due to the circumstances of the facts at issue, a constellation which is not at all comparable with the present one. Irrespective of this, it has been recognized in the case law of the courts of instance that the omitted actions of an SEP negotiating partner can be made up for. Even after the FRAND Objection decision, it can be assumed that Defendant willingness to license can still be expressed at a later stage of the proceedings.

According to the case law of the Federal Court of Justice, the accusation of abuse of a market-dominating position according to the criteria of the Orange Book Standard and those of Huawei exist independent of each other. If the objection of the patent user is justified according to the former criteria, the objection cannot be declared irrelevant on the grounds that the patent user did not meet the criterion of willingness to license according to the Huawei decision. A license offer of the infringer that meets the requirements of the Orange Book standard is, moreover, precisely the embodiment of unconditional willingness in the sense of Huawei. Since Defendant's counter-license offer contained, in addition to a fair and reasonable license fee, a provision for Plaintiff's determination in accordance with § 315 BGB (German Civil Code), which was misunderstood by the Regional Court, and thus the criteria of the Federal Supreme Court were met, there was no longer any scope to deny the FRAND objection. Finally, it would also appear to be contrary to good faith to dispute the willingness to license despite the ongoing discussions in the trial.

It is also not recognizable which - generally applicable - standard the Regional Court will use as a basis when assessing unwillingness to license. The assessment of the Regional Court that Defendant is unwilling to license is incorrect. The Regional Court wrongly limited itself to an examination of obviousness with regard to Plaintiff's offer. Plaintiff's license offer is not FRAND (written statement dated October 19, 2020, page 17/34).

Plaintiff claims that the Court should dismiss the applications.

The (strict) requirements for a discontinuation of a judgment in a patent infringement case are not met.

██████████████████████ Since the wording of the claim does not indicate any limitation, this also means that such a weighting could be "1", as can be seen in paragraphs 0172 and 0185, which each describe the use of the weighting of "1" for the 1/4 pixels. In addition, it should be noted that the concept of weighted average serves to cover all three exemplary embodiments described in the patent in suit, namely the first and second execution example with a weight "1" each and the third execution example (paragraph 0194) with a weight "3". However, a "weighted average" does not require that in the case of weight "1" an actual multiplication by the factor "1" must take place. A device according to claim 8 does not have to be set up to switch flexibly between the three exemplary embodiments and to apply different weights, but it is sufficient that only one of these exemplary embodiments is realized. Since claim 8 thus also includes a weighting with the factor "1", an interpolator is one in accordance with the patented teaching if it carries out the multiplication with "1". How this weighting with the factor "1" or the multiplication with "1" is to be realized, the claim leaves open. If the Regional Court takes into account that an interpolator is then one in accordance with the patented teaching if it carries out the multiplication with 1, it obviously takes into account a multiplication in the purely mathematical sense and not a multiplication that actually has to be carried out by a separate multiplication device. The restrictive understanding of Defendant with the consequence of the use of a separate multiplication device is superfluous in case of a maximum resolution of 1/4 pixel and leads to a waste of computer resources which has to be avoided by the patent.

The findings on the realization of feature 6.3.1 in the AVC/H.264 standard (LGU page 40) would be consistent with the interpretation of the feature in so far that it is stated that the standard defined the use of a weighted average in formula (8-258). There is no difference between this formula and the formula in para. 0185. In both cases, the weighting factor "1" is used and in both cases, this weighting factor is not explicitly stated or applied in the calculation because the specific result does not give different weighting to the values used for interpolation. As mentioned above, an actual multiplication with the factor "1", e.g. by means of a separate multiplication device, is not necessary.

The Regional Court also rightly rejected the objection to cartel law. Defendant is unwilling to license. As far as the appeal was based on the ██████ license offer, it could not be accepted. ██████
████████████████████████████████████████████████████████████████████████████

██████████ This is also and in particular the case in the light of the Federal Court of Justice's decision of 5 May 2020. It could remain open whether the two cartel law objections according to the

Orange Book Standard on the one hand and Huawei on the other hand are mutually exclusive or whether they complement each other in the sense of a practical concordance. Defendant had not met any of the requirements.

███████████████████████████████████████████████████████████████████

███████████████████████ A right for adjustment is not a "concrete counter-offer" in the sense of the Huawei decision (para. 66). The fundamentally different interests compared to those of Orange Book also prohibit, as the Regional Court correctly recognized, the requirement of a concrete counter-offer from being waived. Since Defendant, in contrast to the Orange Book case, again had an open RAND offer from Plaintiff, but this offer was rejected, ███████████████████████████, unlike the appeal, does not in any way imply the unconditional will to accept FRAND conditions of whatever content. The Orange Book objection is a compulsory license objection. Thus, the user must make an offer to the patent holder that the patent holder cannot not refuse without behaving abusively. A merely RAND-compliant offer would not be sufficient. ECJ Huawei, in contrast, is not a compulsory license objection. If the infringer is prepared to take a license in response to the patent owner's notice of infringement, it is still incumbent on the patent owner "to submit a concrete written license offer to the infringer on FRAND conditions and in particular to specify the license fee and the way it is calculated. The patentee is only obliged "to react to this offer with care, in accordance with the accepted business practices in the field and in good faith... implying, among other things, that no delaying tactics is pursued". If, however, he does not accept the offer made to him by the patent holder, "... he can only invoke the abusive character of an action for injunction or recall if he makes a concrete counter-offer to the holder of the SEP concerned within a short period of time, which complies with the FRAND conditions." It could be left open whether the Orange Book objection still applies even if the subject of the action is a SEP with a RAND declaration. In this case, a RAND license offer is open for acceptance by Defendant. Thus, the constellation of the refusal of a RAND license, which characterizes the compulsory license objection according to the Federal Court of Justice Orange Book, is missing. Conversely, an action for injunction by a patent holder who does not comply with his antitrust obligations according to ECJ Huawei should be rejected as (currently) unfounded for this reason alone. Although the antitrust law compulsory license objection according to BGH Orange Book is likely to continue to apply in SEP cases with RAND declaration, this is not decisive in this case. Because Defendant has not fulfilled any of the requirements. ████████████

███████████████████████████████████████████████████████████████████

Plaintiff was therefore entitled to reject the offer without further ado and without behaving abusively.

This applies all the more, since Plaintiff can refer to a - by the Regional Court determined - comprehensively market-accepted standard license program and offer at a value of ███ while the counteroffer provides for only ████████████. ████████████████████████████████████████████████████████████████ ████████████████████████████████████ The provision of a bank guarantee was not sufficient. The appeal does not touch upon this, but rather focusses on the possibility provided by the Federal Court of Justice (BGH) Orange Book to grant the patent holder a right of determination according to § 315 BGB. However, the right of determination torn out of the context of a refusal to grant a license could not render the carefully balanced program of obligations under the European Court of Justice Huawei obsolete by the fact that a standard user who is unwilling to grant a license would, by invoking this right of determination, attempt to bring down the injunctive relief directed against him at the last minute, ████████████████████████████████████ ████████████████████████████████ The right of determination provided for by the Federal Court of Justice, however, was intended to help overcome the unfairness that could result from the fact that the infringer regularly did not have the necessary information enabling him to formulate a "precise", concretely quantified RAND offer. Nor is there any danger that the user might offer excessive RAND fees, since Defendant has all the information necessary to verify the RAND character of the license offered to it. If Defendant rejected Plaintiff's offer, it would have to submit a concrete counter-offer, which would mean that the counter-offer would be immediately acceptable to Plaintiff. Plaintiff could not be instructed to accept a third party provision of indefinite duration. The ECJ also only addresses the possibility of a third party provision in the event that Defendant has made a concrete RAND offer on its part.

Against this background, it is also not objectionable that the Regional Court, when examining the offer of Plaintiff of ████████, limited itself to an obviousness assessment. Although it has been recognized in the case law of the court of first instance that the RAND standard of Plaintiff's offer must in principle be fully convinced by the court and not immediately proceeded to the examination of the counter-offer. The offer of Plaintiff was not relevant in the present proceedings since it was certain that Defendant is not a willing licensee, which the Regional Court assumed correctly. The auxiliary justification of the Regional Court is therefore not relevant. Defendant's statements on ████ and ███ are irrelevant against this background. Irrespective of this, the

summary examination already showed that Defendant was not discriminated compared to ██████ and ████. The contracts are obviously not comparable.

The Regional Court was right to find that Defendant's counter-offers were unRAND. In doing so, the Regional Court did not merely examine the counter-offers in the light of a lack of willingness to license. The same applies to the denial of infringement and the standard essentiality of the patent in suit and other patents. Defendant is of course entitled to contest the infringement and validity of the patent in suit and other patents until a final decision is made. However, this does not release Defendant from the obligation to express its serious and unconditional willingness to accept RAND conditions of whatever content. This willingness on the part of Defendant was correctly denied by the Regional Court in the overall view of all relevant circumstances. In doing so, the Regional Court did not only consider the counter-offer of ███████ in terms of time, but also took into account as important indication whether and when a counter-offer had been made.

The Regional Court also rightly refrained from suspending the legal dispute. The contrary assessment of Defendant, according to which claim 8 was inadmissibly extended, was based solely on the wrong interpretation of feature 6.2. The relevant principles of interpretation led, due to the undisputed fact that there was not a single exemplary embodiment in the patent in suit in which final values were used instead of intermediate values in the step described by feature 6.2, to the imperative conclusion that the "interpolated values" were to be understood as intermediate values, i.e. as weighted sums that had not yet been divided. Final values, i.e. the values obtained by division, truncation and capping of intermediate values, are not included. The Regional Court had correctly assumed this. This is not contradicted if it is explained that an interpolated value is to be understood as "at least also an intermediate value" and there is no reasonable doubt about the understanding of the term "at least also as intermediate values". Because at no place it is said, that end values as well as intermediate values would fall under "interpolated values". Thus, it follows directly from the judgment that the Regional Court has dealt with the question of the alleged inadmissible extension and rightly denied it.

████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

The application for "immediate stay" of the enforcement is obviously unfounded.

Defendant replied to this (pleading of 21.10.2020):

Plaintiff tries unsuccessfully to give a support for the result of the evaluation of the Regional Court with auxiliary reasons. Independently of the fact that these could strike, they would in any case not be relevant here.

With regard to the infringement, the Regional Court does not rely on a possible compliance of calculation results, but correctly takes from the device claim specifications for the design of the multiplier, above all the ability to actually carry out a multiplication with "1".

With respect to the question of suspension, the Regional Court did not establish that the "interpolated values" would not include the final values, which would have been necessary for a rejection of the suspension.

With regard to the objection under antitrust law, Plaintiff acknowledges that the Regional Court obviously misread Defendant's license offer dated April 30, 2020. If Plaintiff makes remarks to why the conditions for the antitrust objection according to Orange Book are not fulfilled, the Regional Court neither concerned itself with it, nor Plaintiff problematized this in first instance.

II.

A .

The request for temporary suspension of the enforcement until a decision on the request for suspension had been made could not be fulfilled. In its decision of 9 April 2019 (6 U 4653/18, Beck GRUR-RS 2019, 41076 para. 109), the Senate took the view that there was no legal basis for this and that an analogous application of the provision in § 719 (1) sentence 1, § 707 ZPO could not be considered due to the lack of a gap in the regulations. Insofar as Defendant refers to the decision of the Federal Court of Justice (BGH) of January 21, 2016 - V ZB 175/13 (BeckRS 2016, 2707), in which it is stated in the facts of the case (ibid. para. 2) that the application for discontinuation was "provisionally granted until February 1, 2016 and Defendant's counsel was given the opportunity to comment", it is not clear on what legal basis such a provisional discontinuation was made. Insofar as the Senate has left it open whether in special exceptional cases a temporary suspension until a decision on the request for suspension may be considered, since such an exceptional case was not deemed to exist in the sense of the handling of other courts as described in Kühnen, Handbook of Patent Infringement, 12th ed., such an exceptional case cannot be established in the present case either.

B .

Defendant's request for temporary suspension of enforcement against security until a decision on the appeal is made is admissible and founded. After the required summary assessment of the prospects of success of the appeal, it can be predicted with the necessary high probability that the contested judgment will probably not stand up to appeal on the grounds given by the Regional Court. The Senate leaves it open whether the assessment of the Regional Court on the question of infringement can be followed (below under 2.a) and whether the rejection of the objection of antitrust law was correct (2.b). In any case, the judgment of the Regional Court cannot serve as a basis for provisional enforcement because, with regard to the alleged inadmissible extension, there is no viable basis for

rejecting the predominant likelihood of success of the nullity complaint filed with regard to the patent in suit which is the requirement for the stay of the infringement proceedings (§ 148 ZPO), cf. below under 2.c.

1. In accordance with § 719 (1) sentence 1, § 707 (1) sentence 1 ZPO, if an appeal is lodged against a judgment declared provisionally enforceable, enforcement of the judgment may be suspended until a decision is made on the appeal against the provision of security.

If the contested judgment is - as here - only provisionally enforceable against provision of security, a temporary suspension of enforcement pending a decision on the appeal (only) comes into consideration if it can be assumed on the basis of a summary review that the contested judgment will not stand or - if the outcome of the appeal proceedings is open - if the appellant substantiates the possibility of the occurrence of extraordinary damage that is practically irreparable and goes well beyond the general effects of enforcement (general view, cf. Karlsruhe Appeal Court, Mitt. 2016, 321 para. 17 - information recording medium; order of 13 October 2014 - 6 U 118/14, juris para. 10 - Leiterbahnstrukturen with further references). The latter is neither shown nor otherwise evident. The fact that enforcement of the judgment has the effect that Defendant can no longer distribute the attacked embodiments in Germany is not sufficient in itself for this purpose, with the consequence that a temporary suspension of enforcement can only be granted if it can already be predicted on the basis of a summary examination that the judgment of the Regional Court will obviously not stand up or does not contain sufficient findings on a question that is decisive in the dispute.

Not subject of the present proceedings is the question whether the judgement of the Regional Court can be upheld in the appeal proceedings as a result, i.e. with different reasons. Rather, the examination is limited to the facts of the case and the reasons given by the Regional Court (Senate, order of April 9, 2019 loc. cit. para. 108 mwN).

2. Based on these principles the following applies:

a. The senate leaves it open whether the evaluation of the Regional Court, according to which the feature 6.3.1 in the sense of its wording is realized with the attacked embodiments, can be qualified as obviously incorrectly.

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████

b. In the context of the application for temporary suspension of enforcement, it can also be left open whether Defendant's objection under cartel law (Art. 102 TFEU) was rightly not considered by the Regional Court to be pervasive. The Senate therefore only sees the need for the following statements:

aa. According to the reconciliation of interests developed by the ECJ in the "Huawei" decision (GRUR 2015, 764), the obligations of the owner of a standard essential patent (hereinafter referred to as patent owner) and the infringer of this patent were specified as follows:

(1) The patent proprietor must notify the infringer of the patent infringement and indicate which patent he considers to be infringed and what the infringement is (ibid. para. 61; BGH GRUR 2020, 961 para. 73 f., 85 ff. - FRAND objection).

(2) If the infringer has thereupon indicated his willingness to enter into a license agreement on FRAND terms, the patent holder must submit a concrete written license offer on FRAND terms. In particular, the license fee and the way it is calculated must be specified (ECJ in the loc loc. cit. para. 63; see also BGH in the loc. cit. para. 75 et seq.)

(3) The infringer must react to this with the care customary in the industry. If he does not accept the offer, he must submit a concrete counter-offer in writing within a short period of time, which corresponds to FRAND conditions (ECJ loc. cit. para. 67 f.; cf. also BGH loc. cit. para. 82 f., 90 ff.)

(4) The infringer who (continues to) use the patent prior to the conclusion of a license agreement must, from the point in time at which the patent proprietor rejects his counter-offer, provide adequate security and accounting for the use of the patent, which also covers the acts of use performed in the past (ECJ, para. 67).

The Senate bases its summary assessment on the fact that this concept of duties according to Huawei does not completely supersede the principles developed by the Federal Court of Justice in the Orange Book Standard decision. This means that the enforcement of a SEP patent by means of an action for injunction, recall and destruction cannot only be regarded as abusive if the infringer has not (yet) agreed to conclude a license agreement under certain reasonable conditions, but the

patent proprietor is also guilty of not having made sufficient efforts to meet the special responsibility associated with the dominant position and to make it possible for an infringer who is in principle willing to license to conclude a license agreement under reasonable conditions, but also if the infringer has made an unconditional offer to the patent holder to conclude a license agreement on conditions which the patent holder may not refuse without violating the prohibition of abuse or discrimination (BGH GRUR 2009, 694 para. 27, 29 - Orange Book Standard; ibid. para. 71 - FRAND objection).

In applying these principles, the Senate arrives at the following summary assessment:

aa. The assessment of the Regional Court that Defendant had behaved hesitantly after Plaintiff's notice of infringement in a letter dated ██████████, in connection with the license offer in accordance with Exhibit K 10 (LGU, page 10), and that in the overall view, taking into account the counteroffers made only in ████████████, it could be assumed that Defendant was unwilling to license, is not obviously erroneous in law by the Senate, taking into account the criteria established by the Federal Court of Justice (ibid. para. 83 ff - FRAND objection).

With regard to the reproach, the Regional Court had deviated from its "FRAND guidelines", the Senate sees no reason to make statements with regard to the qualification of these guidelines, e.g. whether they are to be qualified as "anticipated" legal notices for all respective proceedings with the result that it would constitute a violation of § 139 ZPO if the Regional Court, without prior notification (on file), deviates from these guidelines.

bb. Defendant does not claim itself that the counteroffers of Defendant from ██████████ ██████████ corresponded to the requirements of the EuGH (aaO paragraph 67 f.). As Plaintiff rightfully stresses, the offer of ██████████ (see for this also in the following) does not contain a concrete offer in the sense of the decision of the CJEU.

(1) A different assessment would only be required if Plaintiff's offer of ██████████ was not FRAND-compliant and, based on this, the subsequent behavior, in particular the submission of ██ counter-offers that were not FRAND-compliant, could no longer be taken into account as a burden to Defendant.

The Regional Court did not find that Plaintiff's offer of ██████████ was FRAND-compliant. The restriction of the examination to obvious defects - which was carried out in the context of the auxiliary

justification (LGU, p. 61 et seq.) - is, as the Plaintiff does not fail to recognize, based on a manifest error of law, taking into account the case law of the Karlsruhe Higher Regional Court (Order of 21 May 2016 - 6 U 55/16, Mitt. 2016, 321 para. 31 et seq. September 2016 - 6 U 58/16, juris para. 49 et seq.) and of the Düsseldorf Higher Regional Court (order of 13 January 2016 - 15 U 66/15, juris para. 20 et seq.; order of 17 November 2016 - 15 U 66/15, juris para. 14) on this question.

In the course of its obviousness assessment, the Regional Court did not establish the extent to which the license agreements not submitted by Plaintiff according to Defendant's submissions are not relevant for the assessment of Plaintiff's offer (see for example OLG Karlsruhe GRUR 2020, 166 para. 123). This applies irrespective of the question whether the assessment with regard to the license terms of the MPEG-LA patent pool can be followed. This is already caused by the fact that the Regional Court did not make any findings on the content of the license agreements further concluded by Plaintiff, and that its and its assessment that Plaintiff had shown that the other license agreements were not comparable to agreements being in dispute in the present case, lacks a sound basis. Why the license agreements with          and       , as presented by Defendant, are not relevant for the assessment, cannot be deduced from the mere reference to the agreements in the context of                             , in view of Defendant's detailed explanation of why it is treated unequally vis-à-vis these companies.

(2) In the absence of (viable) findings that the license offer of the Plaintiff of                , met FRAND criteria, the related question, whether compliance with the FRAND criteria in the Plaintiff's offer is necessary to trigger Defendant's obligation to respond or whether, as the Mannheim Regional Court stated in its judgment of August 21, 2020 (2 O 136/18, juris, recital 177 et seqq.), this does not matter, if the offer of the patent owner enables the infringer to make a counter offer, is disputed (see on the state of the dispute Mannheim Regional Court loc. cit. para. 174 f. as well as Düsseldorf Higher Regional Court GRUR 2017, 1219, juris Tz. 200 and Kühnen, Handbuch der Patentverletzung, chapter E marginal nos. 344, 377).

The Senate sees no see a reason to take a position on this question at this stage of the proceedings.

███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████

As Plaintiff also acknowledges, this assessment is manifestly erroneous in law, ████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
████████████████████████████████████████████

According to the Orange Book Standard decision (ibid. para. 27, 29), to which the Federal Court of Justice refers in the FRAND Objection decision (ibid. para. 71), it is an abuse of a dominant position if the patent holder asserts claims for injunctive relief, destruction and recall, whether the infringer has made an unconditional offer to conclude a license agreement on conditions which the patent holder may not refuse without violating the prohibition of abuse or discrimination. However, if the license seeker uses the patent before the patent holder has accepted the offer, he must comply with the obligations which the license agreement to be concluded links to the use of the licensed object, in particular the obligations arising from the agreement to provide accounting and pay the license fees (BGH loc. cit. para. 29, 33, 36). ████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████

███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
████████████████████████████████████ To the extent that Defendant argues that the Regional Court did not take this into account, it seems more than questionable that Defendant can rely on this if the findings of the Regional Court show beyond doubt that the objection raised in the appeal is inconclusive. However, as already explained, this can be left open by the Senate due to the following assessment of the question of stay of proceedings by the Senate.

███████████████████████████████████████████████████
███████████████████████████████████████████████████

signed.

| Retzer | Dr. Ruhwinkel | Lehner |
|---|---|---|
| Presiding judge | Judge | Judge |
| at the Higher Regional Court | at the Higher Regional Court | at the Higher Regional Court |



For the accuracy of the transcript
Munich, 30 October 2020

Rabah, JAng
clerk of the office